IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **FLAUBERT MBONGO,** *et al.*, | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | Civil No.: PJM 15-2941 |
| | * | |
| **SPECIALIZED LOAN SERVICING, LLC,** | * | |
| | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

*Pro se* Plaintiffs Flaubert Mbongo and Charlotte J. Dikongue (hereinafter "Plaintiffs") have sued Specialized Loan Servicing, LLC ("SLS"), alleging violations of the Home Equity Protection Act (HOEPA), 15 U.S.C. § 1639; the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601, *et seq.*; the Truth-in-Lending Act (TILA), 15 U.S.C. § 1601, *et seq.*; the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq.*; and the Maryland Consumer Protection Act (MCPA),[1] Md. Code Ann., Com. Law § 13-101, *et seq.* Plaintiffs add Counts for common law fraud,[2] breach of fiduciary duty, unjust enrichment, and civil conspiracy. SLS has moved to dismiss all of Plaintiffs' claims. For the reasons that follow, SLS's Motion to Dismiss for Failure to State a Claim (ECF No. 11) is **GRANTED**, and Plaintiffs' Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**.

### I. FACTS[3] AND PROCEDURAL HISTORY

Plaintiffs, Maryland residents, reside in their home located at 14423 Bradshaw Drive, Silver Spring, Maryland (the "Property"). Compl. ¶ 1, ECF No. 2.

---

[1] In their Complaint, Plaintiffs reference the non-existent "Maryland Unfair or Deceptive Trade Practices Act." The Court assumes they mean to allege violations under the Maryland Consumer Protection Act (MCPA), which prohibits "unfair or deceptive trade practices." Md. Code Ann., Com. § 13-301.

[2] Plaintiffs style this Count "fraudulent misrepresentation." The Court will assume Plaintiffs intended to bring a claim for common law fraud.

[3] The facts are as alleged in the Complaint or the exhibits attached to it. *See* Fed. R. Civ. P. 10(c).

1

In the fall of 2006, they applied for a mortgage loan (the "Loan") with First Residential Mortgage Service Corporation ("First Residential Mortgage"). *Id ¶* 17. They say that, in connection with their Loan application, they expressly advised First Residential Mortgage that they wanted a loan program with payments "in accordance with their financial abilities." *Id.* According to Plaintiffs, First Residential Mortgage "lead [them] to believe" that they were being placed into a loan owned by the Federal National Mortgage Association ("Fannie Mae"). *Id.* ¶ 18.

At some point in time (unspecified in the Complaint), Plaintiffs discovered that their Loan was never owned by Fannie Mae. *Id. ¶* 19. They allege that their original lender, First Residential Mortgage, employed a "bait and switch" tactic "for the express purpose of being able to reap significant commissions" and to be able to "acquire a high variable interest rate loan." *Id.* Plaintiffs also say that this lender intended to sell the Loan "in parsed fashion"[4] to various third parties for profit, resulting in "certain foreclosure." *Id.* Plaintiffs allege that First Residential Mortgage should have disclosed this information to them prior to closing on the Loan. *Id.* ¶ 20.

According to Plaintiffs, the "end result of the false and misleading misrepresentations and material omissions" of First Residential Mortgage was that they were placed into a transaction "without prior disclosure of negative amortization," and into a loan program which was

---

[4] The Court assumes that Plaintiffs are referring to the practice of securitizing mortgages in the form of mortgage-backed securities ("MBSs"). In several paragraphs of the Complaint, Plaintiffs describe how mortgage lenders sell loans to third parties, who then aggregate mortgage loans into pools and issue MBSs. *See* Compl. ¶¶ 8-16. Plaintiffs contend that that this practice prejudices the mortgage borrower, who they say faces inevitable foreclosure. The suggestion by Plaintiffs that securitization makes their Loan unenforceable or fraudulent is meritless. Courts have routinely rejected this type of claim. *See, e.g., Leith v. Deutsche Bank Nat'l Trust Co.*, No. RDB-15-1672, 2016 WL 704306, at *4 (D. Md. Feb. 23, 2016) ("The Note thus remains enforceable, even after securitization."); *Reed v. PNC Mortgage*, No. AW-13-1536, 2013 WL 3364372, at *3 (D. Md. July 2, 2013) (citing cases); *Anderson v. Burson*, 35 A.3d 452, 456 (Md. 2011). This Court likewise rejects the claim in the present case.

"predetermined for default." *Id.* ¶ 21. Plaintiffs allege that First Residential Mortgage knew "Plaintiffs could not ultimately afford" to pay the terms of their mortgage Loan. *Id.*

Plaintiffs further assert that, as a direct and proximate result of the actions of SLS's "predecessor" First Residential Mortgage, Plaintiffs were subject to a pre-manufactured default which will ultimately result in foreclosure proceedings.[5] *Id.* ¶ 25. Plaintiffs say these actions became manifest when other "predecessors" of SLS refused to modify their mortgage under the Home Affordable Modification Program (HAMP), even though Plaintiffs made good faith attempts to accomplish a modification. *Id.* ¶ 26. Plaintiffs also contend that there "was a conspiracy by [SLS] and its predecessors to construct a premanufactured theft of property and fraud." *Id.* ¶ 27.

On the basis of these allegations, Plaintiffs allege that SLS, the current servicer of the Loan violated: the HOEPA, 15 U.S.C. § 1639(h) (Count I); the RESPA, 12 U.S.C. §§ 2601, *et seq.* (Count II); the TILA, 15 U.S.C. § 1605, and its implementing regulation, 12 C.F.R. § 226.4 (Regulation Z) (Count III); the FCRA, 15 U.S.C. §§ 1681s-2(b), 1681o, and 1681n(a)(2) (Count IV); the MCPA, Md. Code Ann., Com. Law §§ 13-101, 13-303(3), and 13-303(4) (Count V); fraud (Count VI); breach of fiduciary duty (Count VII); unjust enrichment (Count VIII); and civil conspiracy (Count IX).

Plaintiffs originally filed their Complaint in the Circuit Court for Montgomery County, which SLS removed to this Court toward the end of September 2015. *Id.* SLS now moves to dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiffs have failed to state a claim upon which relief may be granted because all their claims are time-barred. Def.'s Mot. Dismiss, ECF No. 11. In the alternative, SLS asserts

---

[5] The Court is unaware of any foreclosure proceedings pending against Plaintiffs. The Complaint does not allege that any foreclosure proceeding is currently in process.

that, even if timely, Plaintiffs' claims must be dismissed because they do not plausibly allege any cognizable wrongs committed by SLS. *Id.*

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) prescribes "liberal pleading standards," requiring only that a plaintiff submit a "short and plain statement of the claim showing that [he] is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing Fed. R. Civ. P. 8(a)(2)). If pleadings allege fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under the heightened pleading standard of Rule 9(b), "[t]hese circumstances are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court will accept factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* Indeed, the court need not accept legal conclusions couched as factual allegations or "unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Markets, Inc. v. J.D. Associates Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). In the end, the complaint must contain factual allegations sufficient to apprise a defendant of "what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted).

While federal courts are obliged to liberally construe a *pro se* litigant's claims in applying the above analysis, this requirement "does not transform the court into an advocate." *United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012) (internal quotations and citations omitted). The Fourth Circuit has noted that "[w]hile pro se complaints may 'represent the work of an untutored hand requiring special judicial solicitude,' a district court is not required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986)).

### III. DEFENDANT'S ARGUMENTS

**A. Statutes of Limitations**

SLS asserts that all of Plaintiffs' claims should be dismissed because they are barred by the respective statutes of limitations for each cause of action. Def.'s Mem. Supp. Mot. Dismiss ("Def.'s Mem.") 3-4.

The Court agrees with SLS.

Plaintiffs' claims under the HOEPA, RESPA, TILA, FCRA, MCPA, common law fraud, breach of fiduciary duty, unjust enrichment, and civil conspiracy all have statutes of limitations ranging between one and five years. *See, e.g.*, *Gilbert v. Residential Funding, LLC*, 678 F.3d 271, 278 (4th Cir. 2012) (noting that claims seeking damages under the TILA and HOEPA have a one-year statute of limitations period and claims seeking rescission have a three-year statute of limitations period) (citing 15 U.S.C. §§ 1635, 1640); *Siple v. First Franklin Financial Corp.*, CIV. A. RDB-14-2841, 2015 WL 2374414, at *10 ("Claims brought pursuant to the FCRA, however, are subject to a statute of limitations measured 'not later than the earlier of . . . two years after the date of discovery by the plaintiff of the violation that is the basis for such liability;

5

. . . or five years after the date on which the violation that is the basis for such liability occurs.'") (quoting 15 U.S.C. § 1681p); *Pitts v. Mozilo*, No. GJH-15-451, 2015 WL 4770941, at *3 (D. Md. Aug. 11, 2015) ("A RESPA claim brought by a private litigant must be brought within either one or three years from the date of the occurrence of the violation, depending on the type of violation.") (citing 12 U.S.C. § 2614); *Willis v. Bank of Am. Corp.*, No. CIV.A. ELH-13-02615, 2014 WL 3829520, at *10 (D. Md. Aug. 1, 2014) ("Under Maryland law, '[a] civil action shall be filed within three years from the date it accrues unless another provision of the Code provides' otherwise.") (quoting Md. Code Ann., Cts. & Jud. Proc. § 5-101)).

The gravamen of Plaintiffs' claims is that their original lender – First Residential Mortgage – failed to disclose certain facts about the nature of the Loan (i.e., that it was negatively amortized), which Plaintiffs say subjected them to "premanufactured" default. *See* Compl. ¶¶ 19-21. The purported acts and omissions at issue in the Complaint thus occurred in 2006, at the time of the Loan's origination. But the longest of the limitations periods noted above – five years under the FCRA – expired in 2011. Plaintiffs filed their Complaint in the Circuit Court for Montgomery County on August 24, 2015, *see* ECF No. 1, well beyond the end of the last of the limitations periods for their claims.

Plaintiffs attempt to rescue their Complaint by saying they did not become *aware* of their injuries until the summer of 2015. As such, they say that the discovery rule makes their claims timely. Pls.' Opp'n Mot. Dismiss ("Pls.' Opp'n") 9-11. They also argue that the terms of their Loan were fraudulently concealed, and that the doctrine of equitable tolling should be applied. *Id.*

The Court disagrees.

"Under the discovery rule, a plaintiff's cause of action accrues" for purposes of calculating the expiration of the statute of limitations "when the plaintiff knows or *reasonably should have known* of the wrong." *Willis*, 2014 WL 3829520, at *10 (internal citations and quotations omitted) (emphasis added). Assuming arguendo that the discovery rule applies to all of the claims raised by Plaintiffs,[6] the Court finds it utterly implausible that they had no reason to know about the allegedly unlawful terms of their Loan (i.e., the fact that it was negatively amortized) prior to attempting to refinance in 2015. Plaintiffs entered into the Loan with First Residential Mortgage in 2006. The fact that they may not have *understood* the consequences of their Loan's payment structure does not mean that they could not have made an investigation with respect to its terms with reasonable diligence. *See Doe v. Archdiocese of Washington*, 689 A.2d 634, 638-39 (Md. App. 1997) (noting that the discovery rule charges an individual "with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued") (internal citations and quotations omitted).

Plaintiffs' argument for equitable tolling on the basis of fraudulent concealment is similarly unpersuasive. While limitations periods can be equitably tolled by a court in circumstances of fraudulent concealment, the standard for doing so is quite high. As Judge

---

[6] The discovery rule may well only apply to Plaintiffs' state law claims. *Doe v. Maskell*, 679 A. 2d 1087, 1090 (Md. 1996). The discovery rule does not govern any of the federal causes of action alleged in the Complaint. The discovery rule "is a general rule of construction that is inapplicable when a statute requires a different time in 'clear and unambiguous' language." *Mullinax v. Radian Guar. Inc.*, 199 F. Supp. 2d 311, 324 (M.D.N.C. 2002) (citing *Hamilton v. 1st Source Bank*, 928 F.2d 86, 87-88 (4th Cir. 1990)). The relevant limitations provisions of the TILA, HOEPA, RESPA, and FCRA expressly indicate when their statutory causes of action accrue, thus foreclosing application of the discovery rule. *See* 15 U.S.C. § 1640(e) (TILA and HOEPA); 12 U.S.C. § 2614 (RESPA); 15 U.S.C. § 1681p (FCRA); *see also Wiseman v. First Mariner Bank*, CIV. A. 12-2423, 2013 WL 5375248, at *27 (D. Md. Sept. 23, 2013) (declining to apply the discovery rule to a TILA claim because TILA's limitations provision expressly provides that it begins to run on the "date of the occurrence of the violation") (citing 15 U.S.C. § 1640e); *Mullinax*, 199 F. Supp. 2d at 324 (holding that the discovery rule does not apply to RESPA claims because the language of 12 U.S.C. § 2614 expressly requires that a suit be brought within one or three years from the date of the occurrence of the violation); *TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001) (holding, under a prior version of 15 U.S.C. § 1681p, that the discovery rule did not apply to the FCRA).

Quarles of this Court explained in *Betskoff v. Cosby*, No. CIV. WDQ-12-3757, 2013 WL 4587634, at *3 (D. Md. Aug. 27, 2013), the equitable tolling doctrine is only available

> in those rare instances when – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result. . . . Equitable tolling may apply when the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action.

(quoting *Spencer v. Sutton*, 239 F.3d 626, 630 (4th Cir. 2001); *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987)) (internal quotations omitted). Again, Plaintiffs have not plausibly alleged, nor can they, that they could not have discovered any of their injuries prior to 2015 despite reasonable diligence. The sort of extraordinary circumstances which warrant application of the equitable tolling doctrine are not present here. *See Chao v. Virginia Dept. of Transp.*, 291 F. 3d 276, 283 (4th Cir. 2002) (noting that the "circumstances under which equitable tolling has been permitted are . . . quite narrow," involving situations where "extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time") (internal citations and quotations omitted).

The Court agrees with SLS that the statute of limitations for each cause of action in the Complaint has expired, and that all of Plaintiffs' claims against SLS (Counts I through IX) should be dismissed. The Court need go no further at this point, because the limitations bar each and every one of Plaintiffs' claims. But, just for the record, even if timely, Plaintiffs' claims would fail on the merits.

**B. Sufficiency of the Allegations**

As SLS points out, all of the alleged wrongdoing in the Complaint stems from the Loan's origination in 2006 by First Residential Mortgage. Def.'s Mem. 4. Since Plaintiffs acknowledge

that SLS is only a downstream servicer of the Loan, Plaintiffs' Complaint against SLS fails to state a claim under the various causes of action alleged. *Id.*

The Court explains.

**1) HOEPA and TILA Claims**

In Count I, Plaintiffs allege that the originating lender – First Residential Mortgage – violated the Home Ownership and Equity Protection Act (HOEPA) by providing unsustainable loan terms during its origination. *See* Compl. ¶¶ 32-39. In Count III, Plaintiffs allege that they did not receive statutory disclosures required by the Truth-in-Lending Act (TILA) at closing. *See id.* ¶¶ 45-47. In both Counts, Plaintiffs suggest that SLS, the Loan's current servicer, should be liable for this conduct. They are wrong.

The TILA is a statute which, in general, requires lenders to disclose certain information about loans (such as their annual percentage rate). *See generally* 15 U.S.C. § 1601, *et seq.* The HOEPA, a 1994 amendment to the TILA, generally "requires lenders making high rate loans to provide additional disclosures for certain home mortgages to borrowers." *Davis v. Wilmington Fin., Inc.*, No. CIV. PJM 09-1505, 2010 WL 1375363, at *4 (D. Md. Mar. 26, 2010) (citing 15 U.S.C. § 1639(a)(1)). Both the TILA and HOEPA only apply to "creditors" and, in limited circumstances, assignees of creditors. *See* 15 U.S.C. §§ 1640, 1641; *see also Davis*, 2010 WL 1375363, at *4. A "creditor" is defined by the TILA as someone who both: "(1) regularly extends . . . consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required;" *and* "(2) is the person to whom the debt arising from the consumer credit transaction is *initially* payable on the face of the evidence of indebtedness." 15 U.S.C. § 1602(g) (emphasis added).

In their Complaint, Plaintiffs posit that First Residential Mortgage – *not* SLS – originated their Loan. Compl. ¶ 17. Plaintiffs do not allege that SLS was involved with the Loan origination or that SLS provided disclosures to them at the time of closing. Since SLS was clearly not the party to whom the Loan was "initially payable," SLS does not qualify as a "creditor" under the TILA or HOEPA. *See* 15 U.S.C. § 1602(g).

The Court also rejects the possibility that SLS is an assignee of the Loan. A creditor's "assignee" under the TILA or HOEPA must actually own the loan at issue, not just service it. *See Davis*, 2010 WL 1375363, at *4 (noting that a defendant servicer of the mortgage loan who was not an assignee or owner of the loan has no liability for alleged violations of the TILA or HOEPA). The facts as alleged are insufficient for the Court to plausibly conclude that SLS is an assignee of First Residential Mortgage.

Plaintiffs do not allege that SLS is a creditor or creditor's assignee under 15 U.S.C. §§ 1640 and 1641, nor could they. Their TILA and HOEPA claims thus fail as a matter of law.

**2) RESPA Claim**

In Count III, Plaintiffs appear to allege that SLS violated the Real Estate Settlement Procedures Act (RESPA) when certain disclosures were not made at the time of the origination of the Loan, echoing their HOEPA and TILA claims. Compl. ¶ 42.

"RESPA creates a private right of action for only three types of wrongful acts: (1) failure of a loan servicer to provide proper notice about a transfer of servicing rights or to respond to a qualified written request for loan information, 12 U.S.C. § 2605; (2) payment of a kickback or unearned fees for real estate settlement services, 12 U.S.C. § 2607; and (3) requiring a buyer to use a title insurer chosen by the seller, 12 U.S.C. § 2608." *Grant v. Shapiro & Burson, LLP*, 871 F. Supp. 2d 462, 470 (D. Md. 2012).

Other than making a passing reference to the statute, Plaintiffs do not specify which provision of RESPA provides the basis for their nondisclosure claim, nor do they attempt to allege any facts which would conceivably tie SLS to any potentially actionable conduct under the statute. Plaintiffs' RESPA claim also fails as a matter of law.

**3) FCRA Claim**

In Count IV, Plaintiffs allege, in very broad brush, that SLS violated the Fair Credit Reporting Act (FCRA) when SLS (along with its predecessors) "wrongfully, improperly, and illegally" provided information to credit reporting agencies "pursuant to its predetermined scheme to defraud." Compl. ¶¶ 49-50.

While Plaintiffs do not specify which provision of the FCRA SLS allegedly violated, the Court will assume that they intend to seek relief under 15 U.S.C. § 1681s-2(b), which sets forth requirements for furnishers of credit information, such as lenders and loan servicers.[7] To bring a claim under the FCRA pursuant to this section, a plaintiff must thus establish: (1) that they notified the credit reporting agencies of disputed information, (2) that the credit reporting agency notified the furnisher of information about the disputed information, and (3) that the furnisher then failed to investigate and modify the inaccurate information. *Davenport v. Sallie Mae, Inc.*, No. CIV. PJM 12-1475, 2013 WL 4010983, at *3 (D. Md. Aug. 2, 2013).

Once again, Plaintiffs have failed to allege the requisite elements of a cause of action, this time under 15 U.S.C. § 1681s-2(b). They do not say they gave notice of a dispute to a credit reporting agency, they do not say that a credit reporting agency notified SLS of the dispute, and

---

[7] Fifteen U.S.C. § 1681s-2(a) also sets forth requirements for furnishers of credit information, but there is no private right of action under that subsection. *See Ausar-El v. Barclay Bank Delaware*, No. CIV. PJM 12-0082, 2012 WL 3137151, at *2 (D. Md. July 31, 2012).

11

they do not say that SLS failed to investigate or modify any inaccurate information. Plaintiffs have not stated a claim against SLS under the FCRA.

   **4) MCPA and Fraud Claims**

In Count V, Plaintiffs allege that SLS committed unfair and deceptive acts, including "fraudulent concealment" in violation of the Maryland Consumer Protection Act (MCPA), when certain facts about their Loan were not revealed to them at the time of the Loan's origination.[8] Compl. ¶ 57. In Count VI, Plaintiffs similarly allege that SLS is liable for common law fraud[9] because of omissions or misrepresentations made during the Loan closing process.

To bring either an MCPA claim based on fraudulent statements or omissions or a common law fraud claim, a plaintiff must allege that the defendant actually made the false representations or omissions at issue (among other elements).[10] A plaintiff must also identify the "the time, place, and contents" of the alleged fraudulent representations or omissions pursuant to the heightened pleading requirements of Rule 9(b). *See* Fed. R. Civ. P. 9(b); *see also Weidman*, 776 F.3d at 219.

Throughout the Complaint, Plaintiffs assert that First Residential Mortgage misrepresented the nature and ownership of the Loan. But Plaintiffs do not allege any false representations made *by SLS*, let alone the time, place, and contents of those representations as

---

[8] *See* text accompanying note 1, *supra*.
[9] *See* text accompanying note 2, *supra*.
[10] In general, the MCPA proscribes fifteen broad categories of unfair or deceptive trade practices, including making false representations or omitting material facts. *See* Md. Code Ann., Com. § 13-301. A plaintiff bringing claim under the MCPA must allege: "(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes [the claimant's] actual injury." *Kaswell v. Wells Fargo Bank, N.A.*, No. CIV. A. RDB-13-2315, 2014 WL 3889183, at *5 (D. Md. Aug. 6, 2015) (internal citations and quotations omitted). To allege common law fraud in Maryland, a plaintiff must plead (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation. *Moscarillo v. Prof'l Risk Mgmt. Servs.*, 921 A.2d 245, 254 (Md. 2007).

required under Rule 9(b)'s heightened pleading standards. As to the only Defendant in this case – SLS – Plaintiffs have failed to allege an MCPA or common law fraud claim.

5) **Breach of Fiduciary Duty Claim**

In Count VII, Plaintiffs contend that SLS breached its fiduciary duty to Plaintiffs when First Residential Mortgage, its predecessor, extended a Loan that was not "best suited to the Plaintiffs given their income and expenses." Compl. ¶ 68. They also say that SLS breached its fiduciary duty to Plaintiffs through a "pattern of fraudulent concealment and misrepresentation" involving the negative amortization of their Loan. *Id.* ¶ 69.

"Maryland courts generally do not recognize breach of fiduciary duty as a standalone tort." *Knight v. Manufacturers & Traders Trust Co.*, 84 F. Supp. 3d 436, 445 (D. Md. 2015) (quoting *Latty v. St. Joseph's Soc'y of Sacred Heart, Inc.*, 17 A.3d 155 (Md. App. 2011)). Moreover, "[i]t is pellucid that, in Maryland, the relationship of a bank to its customer in a loan transaction is ordinarily a contractual relationship between debtor and creditor, and is not fiduciary in nature." *Willis v. Countrywide Home Loans Servicing, L.P.*, No. CIVA CCB-09-1455, 2009 WL 5206475, at *5 (D. Md. Dec. 23, 2009) (quoting *Yousef v. Trustbank Sav., F.S.B.*, 568 A.2d 1134, 1138 (Md. Ct. Spec. App. 1990)).

Plaintiffs have pointed to no special circumstances which would suggest to the Court that SLS assumed fiduciary duties (as opposed to contractual duties) in the servicing of Plaintiffs' Loan. The breach of fiduciary duty claim thus fails as a matter of law.

6) **Count VIII: Unjust Enrichment Claim**

In Count VIII, Plaintiffs claim unjust enrichment, asserting that SLS "reap[ed] profit at the expense of Plaintiffs." Compl. ¶ 73. In support of their claim, Plaintiffs point to the fact that

(removed - see below)

required under Rule 9(b)'s heightened pleading standards. As to the only Defendant in this case – SLS – Plaintiffs have failed to allege an MCPA or common law fraud claim.

5) **Breach of Fiduciary Duty Claim**

In Count VII, Plaintiffs contend that SLS breached its fiduciary duty to Plaintiffs when First Residential Mortgage, its predecessor, extended a Loan that was not "best suited to the Plaintiffs given their income and expenses." Compl. ¶ 68. They also say that SLS breached its fiduciary duty to Plaintiffs through a "pattern of fraudulent concealment and misrepresentation" involving the negative amortization of their Loan. *Id.* ¶ 69.

"Maryland courts generally do not recognize breach of fiduciary duty as a standalone tort." *Knight v. Manufacturers & Traders Trust Co.*, 84 F. Supp. 3d 436, 445 (D. Md. 2015) (quoting *Latty v. St. Joseph's Soc'y of Sacred Heart, Inc.*, 17 A.3d 155 (Md. App. 2011)). Moreover, "[i]t is pellucid that, in Maryland, the relationship of a bank to its customer in a loan transaction is ordinarily a contractual relationship between debtor and creditor, and is not fiduciary in nature." *Willis v. Countrywide Home Loans Servicing, L.P.*, No. CIVA CCB-09-1455, 2009 WL 5206475, at *5 (D. Md. Dec. 23, 2009) (quoting *Yousef v. Trustbank Sav., F.S.B.*, 568 A.2d 1134, 1138 (Md. Ct. Spec. App. 1990)).

Plaintiffs have pointed to no special circumstances which would suggest to the Court that SLS assumed fiduciary duties (as opposed to contractual duties) in the servicing of Plaintiffs' Loan. The breach of fiduciary duty claim thus fails as a matter of law.

6) **Count VIII: Unjust Enrichment Claim**

In Count VIII, Plaintiffs claim unjust enrichment, asserting that SLS "reap[ed] profit at the expense of Plaintiffs." Compl. ¶ 73. In support of their claim, Plaintiffs point to the fact that

their Loan was "negatively amortiz[ed]" and suggest that it was extended "knowing that Plaintiffs would default anyway." *Id.*

To allege unjust enrichment in Maryland, a plaintiff must plead: (1) "[a] benefit conferred upon the defendant by the plaintiff," (2) "[a]n appreciation or knowledge by the defendant of the benefit," and (3) "[t]he acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 351 (Md. 2007).

Plaintiffs have not specified in precisely what manner SLS has been unjustly or inequitably enriched in any way that the law recognizes. Absent identification of any benefit conferred on SLS, Plaintiffs' unjust enrichment claim also lacks foundation in the law.

**7) Count IX: Civil Conspiracy Claim**

In Count IX, Plaintiffs allege a civil "conspiracy to defraud" by SLS. Compl. ¶ 81. They say that SLS engaged in illegal actions to place them into an unsuitable mortgage loan. *Id.* ¶ 78.

Under Maryland law, "[a] civil conspiracy is a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff." *Hoffman v. Stamper*, 867 A.2d 276, 290 (Md. 2005) (quoting *Green v. Washington Suburban Sanitary Comm'n*, 269 A.2d 815, 824 (Md. 1970)).

Here, the unlawful act at issue – placing Plaintiffs into an unsuitable mortgage loan – occurred in 2006, years before SLS became involved in servicing the Loan. On the basis of the facts as alleged in the Complaint, it is categorically implausible that SLS somehow made an agreement with First Residential Mortgage (or any other entity) at the time of the Loan's

origination to employ unlawful means in originating the Loan, years before SLS even undertook to service the Loan. The civil conspiracy claim fails as a matter of law.

**C. Leave to Amend**

In their Opposition to SLS's Motion to Dismiss, Plaintiffs ask the Court for leave to amend their Complaint, should their claims be dismissed. SLS objects, stating that such leave would be futile.

The Court agrees with SLS.

Leave to amend should be freely granted "when justice so requires," Fed. R. Civ. P. 15(a)(2), but should not be granted if amendment "would prejudice the opposing party, reward bad faith on the part of the moving party, or . . . amount to futility." *Rao v. Era Alaska Airlines*, 22 F. Supp. 3d 529, 540 (D. Md. 2014) (quoting *MTB Servs., Inc. v. Tuckman–Barbee Constr. Co.*, No. RDB–12–2109, 2013 WL 1819944, at *3 (D. Md. Apr. 30, 2013)).

The insurmountable bar to all of Plaintiffs' claims against SLS is the statute of limitations applicable to each claim. Accordingly, leave to amend the allegations would be futile and will be denied.

### IV. CONCLUSION

For the foregoing reasons, all Counts of Plaintiffs' Complaint are **DISMISSED WITH PREJUDICE**. This case is therefore **CLOSED**.

A separate Final Order will **ISSUE**.

/s/
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**June 24, 2016**